**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDRE FIELDS**, et al. | **CIVIL ACTION** |
|     Plaintiffs, | |
|     *v.* | **NO. 19-903-KSM** |
| **AMERICAN AIRLINES, INC.**, et al. | |
|     Defendants. | |

**<u>MEMORANDUM</u>**

**Marston, J.**                                                                 **October 7, 2020**

I have before me Plaintiffs Andre Fields, Kendall Green, and Andre Roundtree's Motion

for Disqualification Directed to the Honorable Karen Spencer Marston and to Stay Proceedings

Pursuant to 28 U.S.C. § 455 (Doc. No. 42).[1]  Defendants American Airlines, Inc. and US

Airways, Inc.[2] filed a response in opposition (Doc. No. 51).  Plaintiffs then filed a reply in

support of their motion (Doc. No. 53).  I held an evidentiary hearing on September 21, 2020.

Having considered the arguments and evidence presented, and after reviewing the relevant law, I

find there is no basis for my recusal and deny the motion.

**I.      *Facts***

The United States Supreme Court has held that "the decision whether a judge's

impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and

not as they were surmised or reported." *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 541

---

[1] I have granted the parties' joint request to stay discovery pending resolution of American Airlines'
Motion to Dismiss, so Plaintiffs' Motion to Stay is no longer at issue.  (Doc. No. 52.)

[2] US Airways has merged with American Airlines.

U.S. 913, 914 (2004) (Scalia, J.) (quoting *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (Rehnquist, C.J., respecting recusal)).  Below are the facts here:

Before joining the bench, I worked as an Assistant United States Attorney at the United States Attorney's Office for the Western District of North Carolina (2000–2006) and the United States Attorney's Office for the Eastern District of Pennsylvania (2006–2019).  In the summer of 2018, I became the Chief of the Narcotics and Organized Crime Division.  During my tenure as an Assistant U.S. Attorney, I prosecuted hundreds of cases, including multiple drug investigations.  I worked with law enforcement during these prosecutions and was involved with the issuance of thousands of subpoenas to individuals and businesses during the course of my career.

While a federal prosecutor I worked on a number of cases involving drug traffickers using domestic airlines to travel from the east coast to the west coast in order to purchase narcotics.  One such prosecution was *United States v. Thomas Mooty, et al.*[3]  The initial bill of indictment in the *Mooty* prosecution was returned in November 2012.  Ultimately the *Mooty* prosecution involved eleven defendants who were charged with various violations, including conspiracy to distribute narcotics and to commit money laundering.  One defendant, James Mickens, worked as a baggage claim handler for US Airways.  As relevant to this opinion, Joseph Adens and Jose Luis Limon were also defendants, but as far as I know, neither of them worked for US Airways.[4]

---

[3] There were other related cases to this prosecution, as a number of Philadelphia drug traffickers used similar methods and even at times purchased drugs from the same California sources of supply.

[4] Plaintiffs claim that the *Mooty* prosecution involved two defendants who allegedly worked for US Airways at the Philadelphia International Airport — defendants James Mickens and Jose Luis Limon.  As I have explained to Plaintiffs, I have no knowledge that Limon ever worked for US Airways in Philadelphia or any other city.  The criminal docket shows that Limon was arrested in California, and Limon's sentencing memorandum filed on the public docket details Limon's upbringing in California.  (Crim. Docket, 12-616-8, Doc. No. 603.)  Plaintiffs

During the course of the *Mooty* prosecution, hundreds of subpoenas were issued to numerous businesses. These businesses included multiple domestic airlines, and among those were US Airways and American Airlines. The subpoenas included administrative subpoenas issued by the Federal Bureau of Investigation (the "FBI"), the lead law enforcement agency in this case, as well as grand jury and trial subpoenas. The subpoenas requested numerous flight records for individuals associated with the drug trafficking conspiracy, including "buddy pass" tickets or tickets for those who flew as a registered guest of an airline employee.[5] The records were voluminous. Other than the specific defendants charged, I do not recall the names associated with these records.

The U.S. Attorney's Office would have had contact with an airline's legal subpoena compliance department at times, in order to check on the status of subpoena responses or handle other administrative aspects of obtaining the records. I do not recall any contact with US Airways (or any airline's) Legal Affairs department, and I do not know its former Managing Director Karen Gillen. At one time, I accompanied FBI agents to the Philadelphia International Airport to see how airport employees could use their airport security passes to bypass airport security. The FBI arranged for this visit with the US Airways Corporate Security Office. I do not recall the names of any specific individuals that I may have met on this one occasion.

One of the *Mooty* defendants — Joseph Adens — proceeded to trial in the spring of 2015. Trial lasted several days before Adens entered a guilty plea. In October 2018, I was asked to lecture at the *Law of Investigations* class at the University of Pennsylvania Law School. I

---

submitted no evidence that Limon worked for US Airways or was employed at the Philadelphia International Airport.

[5] My understanding was that US Airways provided employees a certain allotment of "buddy passes" for employees to give to family and friends to purchase tickets. An individual with a "buddy pass" ticket paid a significantly reduced fare. US Airways also allowed employees to sign up an individual as a "registered guest." A registered guest was entitled to fly free on the airline.

discussed certain investigative steps that helped lead to the successful prosecution of the defendants in the *Mooty* case.  The presentation focused on various investigative techniques that were publicly disclosed during the trial of Joseph Adens.

Finally, Plaintiffs have also mentioned my role as a panelist at the *Drug Trafficking Presentation with Drug Enforcement Administration* at the University of Pennsylvania Law School in August 2019.  I do not recall a specific case being discussed during this panel discussion, but instead, the focus was on an overview of drug prosecutions.  Also, this presentation was with the Drug Enforcement Administration (the "DEA"), not the FBI.

## II.    *Procedural History*

This civil case was reassigned to me on February 24, 2020, approximately one year after Plaintiffs filed their initial complaint.  At the time, Plaintiffs' second amended complaint was the operative pleading, and it asserted claims for employment discrimination and civil conspiracy under federal and state law.  American Airlines had moved to dismiss all of the claims brought against it.

### A.    *The Rule 16 Conference*

On March 16, 2020, I held a Rule 16 conference via telephone[6] with the parties, during which we discussed the status of the case, including the pending motion to dismiss and Plaintiffs' request to file a third amended complaint.  We also discussed the potential scope of discovery, and to that end, I asked standard questions about the number of depositions that each party anticipated taking and the names of potential witnesses.  To limit future scheduling issues, I

---

[6] Originally the Rule 16 was going to be conducted in person, however, given the ever-changing circumstances surrounding the COVID-19 pandemic back in March, I rearranged for the conference to occur by telephone.

ordered counsel to confer about dates they would both be available to take depositions and to reserve a few days on their calendar for this case.

After the conference, I issued a scheduling order that reflected my conversation with the parties. (*See* Doc. No. 39.) Among other things, the order set a deadline for amending the pleadings and allowed Plaintiffs to file a third amended complaint to add claims under the Pennsylvania Human Resources Act ("PHRA") and to join Plaintiffs' union as a defendant.[7] The scheduling order also ordered "[t]he parties [to] submit a letter to the Court identifying the dates that they have set aside for deposition no later than" two weeks after the conference. (*Id.* at ¶ 2.) This language and similar deadlines are included in nearly every scheduling order that I issue.

At the end of the day on March 16, Plaintiffs sent a letter to Chambers, asserting that they were disadvantaged by the Court's "request to know the specific people proposed for depositions as well as the requirement to provide specific dates for those proposed depositions." (Ltr. to Judge Marston from Karin Gunter, Mar. 16, 2020.) They also asked, "why the Court is requiring Plaintiffs to provide it with specific proposed deposition dates and why specific names of deponents are needed at this time." (*Id.*) I did not immediately respond to this letter.

### B.    *Plaintiffs' Motion to Disqualify*

Four days later, on March 20, 2020, Plaintiffs filed a Motion to Disqualify and Stay Proceedings. (Doc. No. 41.) They filed a corrected Motion the next day. (Doc. No. 42.) Plaintiffs argue that a reasonable person would doubt my impartiality in this case because as an Assistant U.S. Attorney, I prosecuted two US Airways employees — identified by Plaintiffs as

---

[7] In the parties' Rule 26(f) report, Plaintiffs asked for leave to amend their second amended complaint only "to include PHRA counts I, II, III and IV" and if necessary, "for Plaintiffs to join the Union in its case related to the civil conspiracy charges." (Joint Rule 26(f) Report at pp. 10–11.)

Mickens and Limon — and nine other defendants for drug trafficking violations.  (Doc. No. 42-1 at p. 47.)  "Given the extensive nature of the investigation/prosecution of that criminal enterprise as well as the use [of] U.S. Airways flights, employees and buddy passes," Plaintiffs assert that "frequent contact with U.S. Airways legal affairs department and its managing director, Karen Gillen[,] was crucial to Judge Marston's prosecutorial successes in these matters."  (*Id.*)  Plaintiffs point to my United States Senate Questionnaire for Judicial Nominees, where I included the case of *United States v. Joseph Adens* as one of the ten most significant litigated matters which I personally handled, and the guest lecture that I gave at the University of Pennsylvania in 2018, which discussed the case of *United States v. Adens, et al.*, as evidence that the *Mooty* prosecution was important in my career.  (*Id.*)  Last, Plaintiffs argue that my failure to disclose my connection with American Airlines and with Ms. Gillen, and my order requiring the parties to set aside deposition dates, are further evidence of bias.  (*Id.* at pp. 7–8.)

At the Court's direction, American Airlines responded to the Motion to Disqualify.  (*See* Doc. No. 51.)  It argues that (1) arms' length cooperation between me and then-counsel for US Airways is not evidence of bias under Third Circuit case law; and (2) my request that the parties set aside deposition dates is a general requirement applied across cases and to both parties equally in this case.  (*Id.*)  Plaintiffs filed a reply brief, reiterating their initial arguments.  (Doc. No. 53.)  I scheduled a telephonic evidentiary hearing on the Motion for April 27, 2020.  (Doc. No. 54.)

### C.    *Telephone Conferences*

Before that evidentiary hearing could occur, I held two additional telephone conferences with counsel.  First, I scheduled a status conference for April 1 to discuss the confusion surrounding my request for deposition dates.  (Doc. No. 48.)  I clarified that neither the

scheduling order nor my questions during the Rule 16 conference limited the number of

depositions that each party would be allowed to take, confined the parties to deposing only those

witnesses identified during the pretrial conference, or required that all depositions take place on

the dates identified.  Instead, I asked for the quantity and names of potential deponents to gauge

the scope of discovery and whether there would be problems related to witnesses located outside

of Pennsylvania or the United States.[8]  I also explained that I ask counsel in every case to set

aside dates for depositions to limit scheduling problems in the future.

Second, on April 16, 2020, American Airlines filed a letter with the Court that outlined

two discovery disputes related to the upcoming April 27 evidentiary hearing.  (Doc. No. 56.)

First, Plaintiffs' counsel had sent American Airlines' counsel a subpoena to give to his law

partner, Karen Gillen,[9] which ordered her to appear for the evidentiary hearing.  American

Airlines' counsel informed Plaintiffs that they would need to personally serve Ms. Gillen with a

copy of the subpoena for it to be effective.  Counsel also told Plaintiffs' counsel that he had

spoken with Ms. Gillen, and she "has no information relevant to plaintiffs' disqualification

motion."  Specifically, "she has no recollection of the *U.S. v. Mooty* investigation or prosecution

nor any recollection of Judge Marston or any interactions with Judge Marston in her role as an

AUSA."  (Doc. No. 56-1 at p. 3 (stating that Ms. Gillen would "consider providing a

---

[8] During the evidentiary hearing, Plaintiffs' counsel questioned this explanation:

> And then later on April 1st, 2020, teleconference, your honor explained the reason you did that was because you wanted to know whether we had any out-of-town deponents.  Well, of course, the quickest way to have asked that was just to ask, whether we had any out-of-town deponents as opposed to asking for names.

(Hearing Tr. at 9:21–10:1.)  First, assuming Plaintiffs are correct, a poorly worded question is not evidence of bias.  Second, I remind Plaintiffs that I, not they, have been tasked with the pretrial management of this case and in that role, I may ask questions which they do not like.  Third, given the timing of the Rule 16 conference and the COVID-19 pandemic, it seemed appropriate to discuss where potential witnesses were located.

[9] Ms. Gillen left American Airlines last year and joined the Labor/Employment and Aviation departments at O'Melveny & Myers, LLP in New York — the same law firm, office, and department as the lead counsel for American Airlines here, Mark Robertson.

declaration" to that effect).)  Plaintiffs replied that they would "oppose any declaration and non-appearance by Ms. Gillen."  (*Id.* at p. 1.)

Next, Plaintiffs asked American Airlines to designate an American Airlines employee for a 30(b)(6) deposition on the issues raised in the Motion to Disqualify.  American Airlines opposed the request, arguing that it "should not be required to search for records going back ten years (if any such records even exist) that span a period of up to eight years and present a 30(b)(6) witness."  (*Id.* at p. 3.)  Plaintiffs replied that they would "subpoena the rule 30(b)(6) witness" because American Airlines has "taken the position they have in filing motions to dismiss."[10]  Because the parties were unable to reach a compromise and the evidentiary hearing was only days away, American Airlines filed a letter raising these issues with the Court.

After reviewing American Airlines' letter, I scheduled a telephone conference for April 17, 2020.[11]  At the conference, I told the parties that I was inclined to view American Airlines' letter as a motion to quash and/or motion for protective order because the evidentiary hearing was only days away.  I also stated that if Ms. Gillen was willing to give a declaration stating she had no relevant information, I believed any subpoena served on her may amount to an undue burden.  *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The court for the district where compliance is required must enforce this duty . . . ."); *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

---

[10] To the extent this argument is Plaintiffs' attempt to punish defendant American Airlines for filing motions to dismiss, this is not a permissible reason for Plaintiffs to demand a rule 30(b)(6) deponent.

[11] As explained in my Policies and Procedures, I customarily schedule a telephone conference with counsel as soon as possible after being informed of a discovery dispute and often "before the filing of any responsive brief." Policies and Procedures at p. 11.

of the case . . . ."). Plaintiffs vehemently opposed my viewing the letter as a motion and argued that regardless of Ms. Gillen's declaration, they were entitled to examine her at the evidentiary hearing.

During this conversation, I also addressed some of the concerns raised in Plaintiffs' Motion to Disqualify. Among other things, I explained that I do not know Karen Gillen, that the communication I had with US Airways as a federal prosecutor would have been related to the issuance of subpoenas on the company, and that this communication was so insignificant I did not believe it required disclosure in this case. I also explained that because defendant Joseph Adens proceeded to trial in April 2015, a US Airways employee may have testified about flight records, but I could not recall. Last, I assured the parties that I did not know Plaintiffs and that I had no bias or partiality toward American Airlines.

Following this discussion, Plaintiffs informed the Court that they had no intention of withdrawing their Motion to Disqualify. Given the ongoing discovery disputes and the exigencies caused by the COVID-19 pandemic, I rescheduled the evidentiary hearing to take place in person on July 21, 2020. (*See* Doc. Nos. 60 & 62.) However, two weeks before that hearing, Plaintiffs filed a Motion to Permit Alternative Service of Subpoena on Karen Gillen, Esquire and Rule 30(b)(6) Witness. (Doc. No. 64.) The Motion explained that Plaintiffs had attempted to serve Ms. Gillen multiple times at her law firm in New York, but the firm refused to accept service on her behalf. (*Id.*) Plaintiffs requested permission to serve Ms. Gillen via certified mail, or in the alternative, through the law firm's registered agent in New York. (*Id.*) They also sought permission to serve a corporate designee subpoena on American Airlines via certified mail to American Airlines' counsel, Mark Robertson. (*Id.*) Based on my review of the case law and the relevant Rules of Civil Procedure, I denied both requests. (*See* Doc. No. 65.)

However, I informed Plaintiffs that they could still serve the subpoenas on Ms. Gillen and American Airlines, so long as service complied with Rule 45 — i.e., personal service on Ms. Gillen and service under any of the methods outlined in Rule 4 for American Airlines.  (*Id.*)  I also granted Plaintiffs' request for additional time to complete service and rescheduled the hearing for September 9, 2020.  (*Id.*)

Further issues related to the COVID-19 pandemic required me to reschedule the hearing one more time to September 21, 2020.  (Doc. No. 70.)

### D.    *The Evidentiary Hearing*

At the evidentiary hearing, Plaintiffs gave an opening statement, which identified two additional times when Plaintiffs believe I showed partiality toward American Airlines.  First, Plaintiffs noted that I did not respond to their March 16 letter about deposition dates, yet immediately scheduled a telephone conference in response to American Airlines' April 16 letter raising discovery issues.  (Hearing Tr. at 10:11–11:5.)  Second, Plaintiffs questioned my decision granting them leave to file a third amended complaint but limiting any amendment to the addition of PHRA claims and joining of Plaintiffs' union.  (*Id.* at 12:4–17.)  They argued that they were limited to adding only those claims, but "American was allowed to respond . . . to all of the counts in the [Third Amended] Complaint."  (*Id.*)  In addition to these rulings, Plaintiffs referenced my role in 2019 as a panelist at the *Drug Trafficking Presentation with Drug Enforcement Administration*.  Plaintiffs suggested this, like my 2018 lecture on investigative techniques, is further proof that the *Mooty* prosecution was important in my career.

After their opening statement, Plaintiffs presented the testimony of Anthony Stanley, Director of Planning and Administration for American Airlines at Philadelphia International

Airport.[12] (*Id.* at 13:9–10.)  Mr. Stanley testified that he started as a fleet service agent with US

Airways in 1998 and became the Director of Planning and Administration in August 2008.  (*Id.*

at 13:11–17.)  Mr. Stanley testified that he had no knowledge of the *Mooty* prosecution, that he

did not know James Mickens, that he would not have assisted law enforcement in a drug

trafficking investigation, and that he did not know whose job it would have been to assist in that

type of investigation.  (*Id.* at 13:23–15:3.)  Plaintiffs also attempted to question me.  (*Id.* at

4:18–5:4.)  I declined to engage in questioning, but allowed Plaintiffs' counsel to read her

questions into the record.[13]  (*Id.* at 4:2–4; 15:24–19:16.)

After Plaintiffs' presentation, I gave a brief statement about my role in the *Mooty*

prosecution.  (*Id.* at 20:2–23:7.)  I reiterated that before this case was reassigned to me, I was not

aware of any of the allegations in Plaintiffs' complaint, and I do not know the Plaintiffs or the

other American Airlines employees that are specifically identified in the complaint.  (*Id.* at 24:6–

10.)

## III.    *Standard of Review*

Under § 455(a), a federal judge must "disqualify himself in any proceeding in which his

impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  "The standard for recusal is

whether an objective observer reasonably might question the judge's impartiality."  *Mass. Sch. of

Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997).  "[W]hat matters is

not the reality of bias or prejudice but its appearance."  *Liteky v. United States*, 510 U.S. 540, 548

---

[12]  Plaintiffs did not call Karen Gillen as a witness because of issues they had serving her with a subpoena. (Hearing Tr. at 8:10–9:5.)  Early on in these proceedings, Plaintiffs also indicated that they would call Assistant U.S. Attorney Bernadette McKeon, but AUSA McKeon did not attend the hearing.

[13]  At least one other district court has addressed this issue, and it found there is "simply no precedent for deposing the presiding judge pursuant to compulsory process in aid of motions to disqualify; and, for a number of practical as well as legal and policy considerations, there is no need or justification for such a procedure."  *Cheeves v. S. Clays, Inc.*, 797 F. Supp. 1570, 1580–81 (M.D. Ga. 1992).

(1994).  "The judge does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so."  *United States v. Ciavarella*, 716 F.3d 705, 718 (3d Cir. 2013) (quoting *Liteky*, 510 U.S. at 553 n.2).

"Discretion is confided in the district judge in the first instance to determine whether to disqualify himself because the judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion."  *In re Kensington Int'l Ltd.*, 353 F.3d 211, 224 (3d Cir. 2003).  "Just as a judge should grant the recusal motion where there are sufficient facts to show that a reasonable person would question the judge's impartiality, a judge also has an affirmative duty not to recuse himself or herself in the absence of such proof."  *Mass. Sch. of Law at Andover, Inc.*, 872 F. Supp. 1346, 1349 (E.D. Pa. 1994); *see also United States v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000) ("Judges are not to recuse themselves lightly under § 455(a).").

Typically, the movant must identify an extrajudicial source of bias or prejudice.  *See Liteky*, 510 U.S. at 554–55 (clarifying the "extrajudicial source" doctrine that applies in recusal jurisprudence).  Under this doctrine, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *Id.*  "In and of themselves (*i.e.,* apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved."  *Id.*; *see also Ciavarella*, 716 F.3d at 720 ("[T]o warrant reassignment under § 455(a), a case generally must involve apparent bias deriving from an extrajudicial source, meaning something above and beyond judicial rulings or opinions formed in presiding over the case.").  "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" will not establish bias or partiality.  *Liteky*, 510 U.S. at 555–56.  And a "judge's ordinary efforts at

courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune."  *Id.* at 556.

## IV.    *Discussion*

Plaintiffs have not supported their primary allegations with evidence, and even if they had, the alleged facts would not lead a reasonable person to question my impartiality.  After considering the parties' briefs, the arguments and evidence presented at the evidentiary hearing, and my own knowledge of the underlying facts, I will deny the Motion to Disqualify.

### A.    *Plaintiffs have not presented evidence tending to show bias*

Disqualification is appropriate only when the charge of bias is supported by facts.  *Maier v. Orr*, 758 F.2d 1578, 1583 (Fed. Cir. 1985) ("Absent a factual showing of a reasonable basis for questioning his or her impartiality, or allegations of fact establishing other disqualifying circumstances, a judge should participate in cases assigned.  Conclusory statements are of no effect.  Nor are counsel's unsupported beliefs and assumptions.  Frivolous and improperly based suggestions that a judge recuse should be firmly declined."); *see also TV Comm'ns Network Inc. v. ESPN, Inc.* 767 F. Supp. 1077, 1080 (D. Col. 1991) ("Conclusory allegations do not mandate recusal under § 455.  A judge need not recuse on unsupported, irrational, or highly tenuous speculations and should ignore rumors, innuendos, and erroneous information.").  The "judge need not accept as true the motion's factual allegations, but may contradict them with facts drawn from his own personal knowledge."  *Mass. Sch. of Law at Andover, Inc.*, 872 F. Supp. at 1349; *see also Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 541 U.S. 913 (2004) (Memo Scalia, J.) (providing his account of a hunting trip with Vice President Cheney and correcting the facts presented by the movant in the form of news articles); *Maier*, 758 F.2d at 1581

(contradicting counsel's "belief" that the Chief Judge was in the Air Force by explaining that he had not been associated with any military organization for nine years).

Plaintiffs argue that I should be disqualified because during the drug trafficking prosecution, I was in "frequent contact with U.S. Airways legal affairs department and its managing director, Karen Gillen," who later left American Airlines and joined the Labor/Employment and Aviation departments at O'Melveny & Myers, LLP in New York — the same law firm, office, and department as the lead counsel for American Airlines, Mark Robertson.  (Doc. No. 42 at pp. 2-3; Doc. No. 42-1 at pp. 6-7.)  Plaintiffs point to my Senate Questionnaire, which includes the Joseph Adens trial as one of my ten most significant litigated matters, and lists a guest lecture that I gave at the University of Pennsylvania Law School where I discussed this prosecution, to show that this case was important in my career.  (Doc. No. 41-1 at p. 7; *see also* Hearing Tr. at 6:14–19.)  But even assuming Plaintiffs have proven that this case was important in my career, they have provided no evidence of a relationship between me and US Airways generally or me and Ms. Gillen specifically.  To the contrary, Plaintiffs' lone witness, Anthony Stanley, testified that he had no knowledge of the *Mooty* prosecution, nor did he know who at US Airways would have assisted in the prosecution.  (Hearing Tr. at 13:23–15:3.)  Similarly, American Airlines' counsel represented that Ms. Gillen has no knowledge of the *Mooty* prosecution or of me and offered to provide a declaration from Ms. Gillen to that effect.

I am particularly unpersuaded by Plaintiffs' unsupported allegations given my own recollection of the underlying incident, including the fact that the U.S. Attorney's Office contact would have been limited to the US Airways subpoena compliance department for the *Mooty* prosecution, as well as other investigations/prosecutions involving subpoenas for airline records.

I do not recall ever hearing of, let alone meeting anyone, named Karen Gillen.  *See Maier*, 758

F.2d at 1583 (requiring more than "counsel's unsupported beliefs and assumptions"); *see also*

*Cheney*, 541 U.S. at 924 ("The decision whether a judge's impartiality can reasonably be

questioned is to be made in light of the facts as they existed, and not as they were surmised or

reported," and "largely inaccurate and uninformed opinions cannot determine the recusal

question.").

### B.      The facts do not support recusal

Even if Plaintiffs were able to show that I was in "frequent contact" with Ms. Gillen and

others at US Airways during my career as a federal prosecutor, those facts would not require

recusal.  Plaintiffs suggest five reasons for recusal.  First, they argue that I was in contact with

Ms. Gillen, and Ms. Gillen is now at the same law firm and in the same department as the lead

counsel for the Defendants, Mark Robertson.  (Doc. No. 42 at pp. 2-3; Doc. No. 42-1 at p. 7.)

Second, they argue, more generally, that I was in frequent contact with US Airways legal affairs

(now Defendant American Airlines) during the criminal prosecution.  (Doc. No. 42 at pp. 2–3;

Doc. No. 42-1 at p. 7.)  Third, they note that James Mickens worked as a fleet service agent and

they are also employed as fleet service agents.  (*Id.* at p. 7.)  Fourth, Plaintiffs argue that my

failure to disclose the *Mooty* prosecution is itself evidence of bias toward American Airlines.

(Doc. No. 53 at p. 3; Hearing Tr. at 8:10–15.)  Last, they argue that my orders in this case

demonstrate partiality toward American Airlines.  (Doc. No. 42-1 at pp. 7–8.)  I address each

argument in turn.

### 1.      Contact with Defendant's Law Firm

First, although I do not know Ms. Gillen, the fact that I may have worked with an

attorney who now works for the same law firm as defense counsel does not give rise to an

inference of impartiality.  In *Microsoft Corp. v. United States*, Chief Justice Rehnquist analyzed whether he should recuse himself from the case because his son worked for the firm representing Microsoft and was an attorney for Microsoft in different antitrust litigation.  530 U.S. at 1301 (explaining that Judge Rehnquist "therefore considered at length whether [my son's] representation requires me to disqualify myself on the Microsoft matters currently before this Court").  Judge Rehnquist concluded that a "well-informed individual" would not find that "an appearance of impropriety exists simply because my son represents, in another case, a party that is also a party to litigation pending in this Court."  *Id.* at 1302.

The reasoning in *Microsoft* is even stronger in this case because the business relationship identified by Plaintiffs is decidedly less compelling than the familial connection identified in *Microsoft*.  Although a presiding judge may have a handful of close family members, he or she likely has hundreds if not thousands of business connections and acquaintances.  Given the nature and quantity of business relationships, that relationship, which is an unavoidable part of professional life, does not on its own create a reasonable appearance of bias in favor of that individual or the law firm for which they work.  *See Maier*, 758 F.2d at 1583 ("Nor does a mere prior association form a reasonable basis for questioning a judge's impartiality.")

### 2.    *Contact with Defendant*

Similarly, even if I did have a business relationship with US Airways and its employees, previous contact, and even a relationship, with one of the parties in the case is not necessarily grounds for recusal.  *See id.*; *cf. Laxalt v. McClatchy,* 602 F. Supp. 214, 217 (D. Nev. 1985) ("A judge is not expected to live in isolation.  Through the years, he is bound to have developed many business and personal contacts in the community, and to have acquired supporters and critics."); *In re Medrano Diaz*, 182 B.R. 654, 659 (Bank. Ct. Puerto Rico 1995) (holding that

disqualification was not warranted where the judge and one defendant were both officers in the military because they were "neither in the same chain of command nor personal friends" and "there has never been any interaction between [the other] defendant and the undersigned").  For example, in *In re Community Bank of Northern Virginia*, the movant alleged that the district court judge was biased because (1) he was a speaker at the opposing party's law firm's "Diversity Retreat" five years earlier and (2) his former law clerk was a partner at the law firm for 13 years.  622 F.3d 275, 314 (3d Cir. 2010).  The Third Circuit found that these allegations of extrajudicial "bias on the party of the District Court border on the frivolous" and were "wholly inadequate to show objective bias."  *Id.* at 314 & n.36.

Similarly, in *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, the plaintiff argued that the district judge's "participation in 1974–75 on an outside committee which tried to help the Delaware Law School, where his son was then a student, obtain ABA accreditation justifies recusal" because the ABA was a party in the case.  107 F.3d at 1042.  Given "Judge Ditter's limited role at the time and the amount of time which has passed," the Third Circuit held that "nothing related to Delaware Law School creates an appearance of bias in this case."  *Id.* at 1043.  The court went on to state that "we do not understand why Judge Ditter's participation in the Delaware Law School accreditation process, no matter how intensive, would cause an objective observer to believe that he would not be impartial here."  *Id.* "The Delaware Law School and MSL situations, though somewhat similar in nature, are unrelated.  Indeed, it is difficult to even articulate a reasonable basis on which to argue that by reason of Judge Ditter's experiences regarding the Delaware Law School he would have a bias here."  *Id.*

Like *Massachusetts School of Law*, Plaintiffs in this case have overblown my limited interactions with US Airways.  And even if they were correct as a factual matter, and I was in

"frequent contact" with US Airways employees, that alone does not create the appearance of bias in this case.

### 3.    *Prosecution of US Airways Baggage Claim Handler*

Third, Plaintiffs suggest that I will be biased against them because they work as fleet service agents for US Airways/American Airlines, and as part of the *Mooty* case, I prosecuted James Mickens, who at the time of his arrest was employed as a US Airways baggage claim handler.  (Doc. No. 42–1 at p. 7.)  Plaintiffs have not explained why the *Mickens* prosecution would have left me biased against *all* US Airways fleet service agents or against Plaintiffs specifically.  This employment discrimination case is unrelated to any drug trafficking prosecution, and there is no overlap between Plaintiffs in this case and the defendants in the criminal prosecution.  Without more, I find a reasonable person would not question my ability to be impartial merely because I previously prosecuted a defendant who was employed in the same position as Plaintiffs.

### 4.    *Failure to Disclose Previous Lawsuit*

Next, Plaintiffs argue that my failure to disclose my contacts with US Airways in light of my involvement with the *Mooty* drug trafficking prosecution, which included the prosecution of a US Airways' employee, would cause a reasonable person to question my impartiality.  (Doc. No. 53 at p. 3; Hearing Tr. at 8:10–15.)  I disagree.  An objective observer would not reasonably question my impartiality merely because I failed to disclose that as part of a previous criminal prosecution, I may have tangentially interacted with a defendant (US Airlines now merged as American Airlines) in this civil case.  It is possible that the failure to disclose could, in certain cases, lend an appearance of partiality.  *Compare Locricchio v. Continental Inv. Co.*, Civil No. 10-00710 ACK-RLP, 2013 WL 593354, at *8 (D. Haw. Feb. 14, 2013) (acknowledging failure to

disclose argument, but finding that the movant had waived the issue) *with Shuler v. Duke*, No. 2:16-cv-501-VEH, 2018 WL 2445684, at \*2 (N.D. Ala. May 31, 2018) (finding that the plaintiffs "did not present any evidence indicating that Judge Smith had a personal bias or prejudice in favor of or against any party to this proceeding" without addressing failure to disclose issue).

However, the mere failure to disclose, on its own, cannot be sufficient to require recusal. If it were, then any time a party subjectively believed the presiding judge was biased because of some previous action — no matter how unreasonable that belief may be — the judge would be required to recuse himself or herself for failing to disclose that previous action. As I have explained multiple times, I do not know Karen Gillen, I do not know Plaintiffs, and I had limited interactions with US Airways as part of the *Mooty* prosecution or any other prosecution. In short, I reasonably believed that there was nothing for me to disclose to the parties, and therefore, this nondisclosure, on its own, is not evidence of bias or partiality.[14]

### 5.   *Case Management Orders*

Plaintiffs also point to three rulings that I made in this case as evidence of my bias in favor of American Airlines. As an initial matter, it is worth reiterating that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 554–55. Applying that rule to the facts in *Liteky*, the Supreme Court concluded that "judicial

---

[14] During the evidentiary hearing, Plaintiffs also stated that it is their position "that at least ethically the Court should have mentioned to counsel for the Plaintiffs and Defendant that you had involvement with U.S. Airways/American Airlines in Philadelphia with fleet service agents who worked for those companies." (Hearing Tr. at 19:9–14.) Plaintiffs do not discuss the Code of Conduct for United States Judges, nor do they identify which canons they believe I violated. However, their arguments implicate Canon 2, which states a "judge should avoid impropriety and the appearance of impropriety in all activities" and should "at all times act in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2(A). The Commentary to Canon 2(A) clarifies that an "appearance of impropriety occurs when reasonable minds, with the knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's . . . impartiality . . . is impaired." As discussed throughout this opinion, my role in the *Mooty* prosecution or any other prosecution where subpoenas may have been issued to an airline, including US Airways, does not give rise to the appearance of impartiality in favor of American Airlines or its attorney. And contrary to Plaintiffs' suggestion, a judge is not ethically bound to disclose every prior business interaction, no matter how insignificant.

rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses" were inadequate grounds for recusal. *Id.* at 556; *see also United States v. Wecht*, 484 F.3d 194, 217 (3d Cir. 2007) ("While we are somewhat puzzled by some of the District Court's actions in managing exhibits, we do not believe they display bias, much less the degree of favoritism or antagonism that is required for recusal."); *Ciavarella*, 716 F.3d at 720 ("[T]o warrant reassignment under § 455(a), a case generally must involve apparent bias deriving from an extrajudicial source, meaning something above and beyond judicial rulings or opinions formed in presiding over the case."); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000) ("[A] party's displeasure with legal rulings does not form an adequate basis for recusal.") (citations omitted); *Cheeves*, 797 F. Supp. at 1581 ("If a circumstance giving rise to a perceived or even a declared prejudice by a judge arises out of communications or events known to the judge only by virtue of . . . actions taken by him or her in a judicial capacity . . . there is no basis as a matter of law for disqualifying the judge."). With that standard in mind, I address each ruling in turn.

### i. *Deposition dates*

First, Plaintiffs argue that my order requiring the parties to set aside deposition dates is evidence of bias because they are "harmed and disadvantaged by the Court's extraordinary micromanagement of this litigation, which in fact goes beyond the Rules of Civil Procedure and its own Policies and Procedures and only advantages American Airlines." (Doc. No. 42-1 at p. 8.) During a status conference with the parties, I clarified that my request for deposition dates was merely a request that *counsel* identify dates that they would be available to help limit scheduling conflicts in the future. It was not a requirement that all depositions occur on those dates. In their reply brief, Plaintiffs acknowledge that I ask for deposition dates in all cases to

determine "whether any potential deponents were outside of the region, thereby requiring additional time for fact discovery scheduling."  (Doc. No. 53 at p. 4 n.1.)  But Plaintiffs clarified that the "unusual move" with which they take issue is the "added requirement at the Rule 16(f) pretrial teleconference that the parties set aside dates for depositions and give the Court the names of deponents during the conference."  (*Id.* at p. 4.)

My questions about potential deponents and requirement that the parties set aside dates for depositions are the types of "routine trial administration efforts" that are almost always inadequate grounds for recusal.  *See Liteky*, 510 U.S. at 556; *see also Wecht*, 484 F.3d at 217 ("[D]istrict courts have wide discretion in the management of their cases.").  More importantly, a ruling that is applied evenly to the parties in this case and every other case cannot possibly evidence bias as to one party.  *See* JUDICIAL BIAS, Black's Law Dictionary (11th Ed. 2019) ("A judge's bias toward one or more of the parties to a case over which the judge presides."); *see also* BIAS, Black's Law Dictionary (11th Ed. 2019) ("A mental inclination or tendency; prejudice; predilection.").

### ii.    *Teleconference on discovery disputes*

Second, Plaintiffs argue that I demonstrated bias when I chose not to respond immediately to their March 16 letter but then did schedule a telephone conference with the parties within a day after receiving American Airlines' letter raising discovery disputes. (Hearing Tr. at 10:11–18.)  Plaintiffs also argue that my interpretation of that letter as a motion to quash and/or motion for protective order is evidence of bias.  (*Id.* at 10:19–11:5.)

A judge's decisions on when and how to respond to inquiries and discovery disputes are most certainly "routine trial administration efforts."  *See Liteky*, 510 U.S. at 556.  And in this case, my method and timing for addressing the two letters is the result of their differing subject

matters, not their differing filers.  Plaintiffs' letter asked the Court to justify an order directed to both parties.  Whether and when to respond to such a request is surely within the discretion of the Court, and although Plaintiffs suggest that I ignored their letter, I addressed their concerns during my April 1 telephone conference with the parties.  American Airlines' letter, by contrast, raised a potential discovery dispute related to a hearing that was only a few days away. Consistent with my Policies and Procedures, I immediately scheduled a telephone conference with counsel to discuss those disputes.  During that conference, I stated that I was inclined to interpret American Airlines' letter as a motion to quash or a motion for protective order — a common occurrence in this and other federal courts — however, after hearing the parties' arguments, I chose not to interpret the letter that way, and instead, rescheduled the evidentiary hearing at Plaintiffs' request.  (*See* Doc. No. 59 at p. 2 ("Plaintiffs seek an extension of time for the evidentiary hearing as well as for personal service of the proposed subpoenas . . . .").)

### iii.      The third amended complaint

Third, Plaintiffs reference my order allowing them to file a limited third amended complaint, arguing that they were allowed to add only PHRA claims and to join Plaintiffs' union, but American Airlines was allowed to file a motion to dismiss the entire third amended complaint and was not similarly limited to dismissing only Plaintiffs' new claims.  (Hearing Tr. at 12:4–15.)  This argument ignores the fact that *Plaintiffs* asked the Court for leave to file a third amended complaint *only* for purposes of adding the PHRA claims and the union.  (Joint Rule 26(f) Report at p. 11 ("Thus, Plaintiffs seek to amend their second amended complaint to include PHRA under counts I, II, III, and IV.  Furthermore, if the Court deems it necessary for Plaintiffs to join the Union in its case related to the civil conspiracy charges, Plaintiffs seek leave to amend their complaint for that matter as well.").)  American Airlines opposed the request, but the Court

ruled in favor of Plaintiffs and allowed them to amend their complaint for a *third* time.  It is disingenuous for Plaintiffs to suggest that I am biased against them because I ruled in their favor on a contested motion and granted them the relief that they requested.  As for American Airlines' response, the Federal Rules of Civil Procedure, not I, allowed American Airlines to file a motion to dismiss the entire third amended complaint.  *See* Fed. R. Civ. P. 12(b).  Plaintiffs' suggestion of prejudice is also particularly unavailing in this instance because American Airlines has moved to dismiss every iteration of this complaint and its most recent motion largely restates its previous motions.

## V.   *Conclusion*

For the reasons discussed above, I find that an objective observer would not reasonably question my impartiality.  Plaintiffs' Motion to Disqualify will be denied.

An appropriate order follows.