**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANDRE FIELDS**, et al. | **CIVIL ACTION** |
| Plaintiffs, | |
| *v.* | **NO. 19-903-KSM** |
| **AMERICAN AIRLINES, INC.**, et al. | |
| Defendants. | |

## MEMORANDUM

**Marston, J.**                                                                        **June 17, 2022**

Before the Court are four motions to compel discovery, one motion for reconsideration of the Court's May 6, 2022 Order appointing a special master to oversee Plaintiff Andre Fields's deposition, and one request to extend the deadline for fact discovery.  The Court held a teleconference with counsel on June 16, 2022.  For the reasons discussed below, Defendant American Airlines Inc.'s motions to compel are granted.  The remaining motions are denied, as is Plaintiffs' request to extend the discovery deadline.

## I.    MOTIONS TO COMPEL

We begin with the motions to compel.[1]  Plaintiffs Fields, Kendall Green, and Andre Roundtree move to compel answers to questions that were posed to American's Vice President, Cedric Rockamore, during his deposition (Doc. No. 119) and the production of documents in response to their second request for production (Doc. No. 120).  American Airlines moves to compel Plaintiffs' estimation of damages and related computations as required by Federal Rule

---

[1] Because we write only for the parties, who are intimately familiar with the facts surrounding this case, we do not restate the underlying facts here.

of Civil Procedure 26(a)(1) and in response to American Airlines's Interrogatory Nos. 5, 6, and 7.  (Doc. No. 122.)  American Airlines also moves to compel independent medical examinations ("IMEs") of each Plaintiff.  (Doc. No. 127.)  We address each motion in turn.

### A.      Answers to Deposition Questions

First, Plaintiffs take issue with the answers given during the deposition of Cedric Rockamore, Vice President of Global People Operations and Chief Diversity Officer for American Airlines.  (*See generally* Doc. No. 119.)  Plaintiffs' counsel took Rockamore's video deposition on April 14, 2022.  (*Id.* at p. 4.)  American Airlines's current in-house counsel, Robert Jones, was in the room with Rockamore during the deposition, and Andrew Lichtenstein—the attorney who defended the deposition—appeared remotely.

Plaintiffs argue that during the deposition, Lichtenstein "engaged in deliberate deposition violations by making speaking and/or suggestive objections, coaching objections, colloquies and objections preserved for trial . . . that unduly influenced" Rockamore's testimony about American Airlines's top filling practices.  (Doc. No. 119-1 at p. 1.)  Plaintiffs also argue that Lichtenstein improperly directed Rockamore not to answer questions about his interactions with former in-house counsel, Karen Gillen.  (*Id.*)  Last, Plaintiffs argue that Jones's presence during Rockamore's deposition resulted in abusive "off-record private conferences."  (*Id.*)  They "seek to re-depose Mr. Rockamore on violation matters," along with sanctions against defense counsel.  (*Id.*)

American Airlines disputes Plaintiffs' characterization of Lichtenstein's objections and Rockamore's responses.  (Doc. No. 121 at pp. 2–3.)  American Airlines asserts that Lichtenstein's objections were not improper coaching, that he appropriately objected to Plaintiffs' counsel's "extensive questioning" about top filling because all claims related to that practice have been dismissed with prejudice, and that Rockamore was correctly directed not to

answer questions about his conversations with Karen Gillen, Esq. and with Robert Jones, Esq. because those conversations are privileged.  (*See generally* Doc. No. 121.)

### 1.   <u>Standard of Review</u>

Federal Rule of Civil Procedure 30 governs deposition practice, including objections. The Rule clarifies that when counsel for the deponent objects "to evidence, to a party's conduct, . . . to the manner of taking the deposition, or to any other aspect of the deposition," he or she must ensure the objection is "noted on the record" and "stated concisely in a nonargumentative and nonsuggestive manner."  Fed. R. Civ. P. 30(c)(2); *see also Clarity Sports Int'l LLC v. Redland Sports*, No. 1:19-CV-00305, 2021 WL 2981038, at *2 (M.D. Pa. July 15, 2021) ("[O]bjections must be succinct and verbally economical, stating the basis of the objection and nothing more." (cleaned up)).  "Excessive objections, unnecessary commentary, and repeated interruptions disrupt the orderly question and answer flow of a deposition and are obstructive to its purpose."  *Clarity Sports Int'l LLC*, 2021 WL 2981038, at *2 (quotation marks omitted); *see also Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525, 528 (E.D. Pa. 1993) ("A deposition is meant to be a question-and-answer conversation between the lawyer and the witness.").  Counsel may instruct a deponent not to answer a question "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion" to terminate or limit the deposition.  Fed. R. Civ. P. 30(c)(2).

At all times, the court retains broad authority and discretion to control the deposition and issue sanctions as appropriate.  *See* Fed. R. Civ. P. 30(d)(3)(A)–(B) (authorizing the court to terminate or limit the scope of a deposition that is being "conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party"); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007) ("The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters

generally entrusted to the discretion of the district court."); *Hall*, 150 FR.D. at 527 ("Taken together, Rules 26(f), 30, and 37(a), along with Rule 16, which gives the court control over pre-trial case management, vest the court with broad authority and discretion to control discovery, including the conduct of depositions.").

### 2.   Discussion

Plaintiffs argue that Lichtenstein engaged in improper "speaking objections" "nearly 30 times" during Rockamore's deposition.  (Doc. No. 119-1 at p. 2.)  In particular, they take issue with Lichtenstein's objections to questions about American Airlines's top filling practices, to questions about Rockamore's work with Karen Gillen, Esq. on last chance agreements, and to questions about Rockamore's off-the-record conversations with Robert Jones, Esq.  (*See id.* at pp. 2–7.)

### i.   *Questions About Top Filling*

The first category of challenged objections relate to American's top filling practices.[2]  On September 22, 2021 the Court dismissed all claims related to top filling as precluded by the doctrine of *res judicata*.  (*See* Doc. No. 81 at p. 16 ("[T]o the extent that Plaintiffs' claims are based on American Airlines's top filling practices, they are barred by the doctrine of *res judicata*, and we grant American's motion to dismiss with prejudice.").)  And on January 27, 2022, the Court denied Plaintiffs' motion to compel production of documents related to top filling.  (*See* Doc. No. 98.)  In that Order, we recognized that Plaintiffs "may need to put forth evidence that they complained to management about top filling because they allege that management retaliated against them," but emphasized that "any substantive evidence about the extent of top filling, at PHL or anywhere else, and whether that practice amounted to

---

[2] Top filling is the practice of refilling airplane lavatories with a chemical agent using five-gallon jugs.

discrimination is irrelevant because Plaintiffs cannot rely on it as independent evidence of discrimination." (*Id.* at p. 2.) To avoid any confusion, the Court specifically noted that "it is irrelevant who made the decision to use and discontinue use of Deer Park/Nestle five-gallon jugs to service the lavatories on Boeing 757, just as it is irrelevant when, where, and why that decision was made." (*Id.* (quotation marks omitted).)

During Rockamore's deposition, Plaintiffs' counsel went well beyond the limited scope[3] outlined by the Court, asking, among other things:

- "Is the term 'top filling' a term used in the airline industry?"

- "Tell me what the process is about top filling."

- "So given that you worked at DCA, and DFW, was the term 'top filling' used at DCA?"

(*See* Doc. No. 119-3 at 123:19–127:5.)

Although defense counsel granted some leeway with questioning, when Plaintiffs' counsel continued in this vein, he objected, "I'm going to object on relevance. Again, we talked about this before. This claim related to top filling has been dismissed. It has no relevance to this action moving forward. I'll let you ask a couple more questions on this, but I think we need to move on after that. This is not relevant to the case." (*Id.* at 127:6–16.) Nevertheless, the top filling questions continued:

- "Do you remember the term—or do you remember the process of top filling being used at DCA?"

---

[3] Indeed, counsel went so far beyond the permissible bounds set by the orders that the Court agrees with American Airlines that the only objectionable conduct here is Plaintiffs' counsel's blatant disregard of this Court's prior orders and repeated admonitions that *top filling is not at issue in this case*. If Plaintiffs' counsel continues to unnecessarily seek discovery on this issue, the Court will entertain a motion for sanctions.

- "Do you remember the process of top filling being used at DFW?"

- [showing Rockamore a photograph of someone filling an airplane lavatory] "So the words under the picture says [sic], The practice is called top filling and is done because American Airlines has not repaired the valve below the plane where the chemical is supposed to be pumped in by a hose from the lavatory truck?"

- "Do you recall how American Airlines, when you were vice-president of hub operations at PHL, how they handled the use—how they addressed the use of Deer Park Nestle water bottles for top filling?

(*Id.* at 128:11–129:14, 137:1–138:16, 138:24–141:24.)

Typically, "[r]elevance objections need not be posed during a deposition, because they are preserved for trial." *In re Fetzima*, Civil Action No. 2:17-cv-10230 (ES) (SCM), 2020 WL 6268684, at *1 (D.N.J. Oct. 23, 2020). But here, Plaintiffs' counsel's top filling questions were extensive and implicated two prior orders of this Court. *Cf.* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary . . . to enforce a limitation ordered by the court . . . ."); *In re Fetzima*, 2020 WL 6268684, at *1 ("Relevance is generally not a reason to refuse to answer or for counsel to instruct the witness not to answer. The proper procedure is to answer the questions and resolve the objection at pretrial or trial *unless the questions are so pervasive that a motion is appropriate*." (emphasis added)). Given these orders and Plaintiffs' counsel's continued questioning about top filling at PHL and other airports, we are not inclined to find that defense counsel erred by objecting. And, in any event, there is no indication that Lichtenstein forbade Rockamore from responding to the inappropriate questions, and it appears Rockamore answered each question to the best of his recollection. Therefore, even if we were to find defense counsel's objections inappropriate, we would also find them harmless.

ii.      *Questions About Karen Gillen, Esq.*

Next, Plaintiffs' counsel asked Rockamore about his interactions with American Airlines's former in-house counsel, Karen Gillen, Esq., and whether he worked with her on last chance agreements.  (*See* Doc. No. 119-3 at 263:1–265:6.)  Defense counsel objected to these questions as implicating the attorney-client privilege and the attorney work product doctrine. Based on the question phrased by Plaintiffs' counsel—"[W]ere you aware of whether or not Ms. Gillen had worked—did she work with you or anyone at PHL related to the [last chance agreements]?"—the Court agrees that the question appears to seek privileged information.  *See In re Arthur Treacher's Franchisee Litig.*, 92 F.R.D. 429, 435–36 (E.D. Pa. 1981) ("[E]ven the subject matter of confidential communications falls within the ambit of the attorney-client privilege.").  Therefore, defense counsel was permitted to object and instruct his client not to answer the question.  *See York Grp., Inc. v. Pontone*, No. 2:10-CV-1078-JFC, 2012 WL 12895533, at *2 (W.D. Pa. Oct. 24, 2012) ("In this portion of the transcript, Mr. Fawcett also interposed attorney-client privilege and attorney work-product objections to questions directed to Mr. Bartolacci regarding why Plaintiffs did not depose customers in this case.  Frankly, those objections are legitimate in my view as the reasons for choosing to depose or not depose a witness are 'pure' attorney work-product.").

iii.      *Conversations with Robert Jones During Deposition*

Third, Plaintiffs' counsel asked Rockamore about the subject of his conversations with Lichtenstein during breaks in the deposition.  Believing any conversation he had with defense counsel was privileged, Rockamore initially refused to answer her questions.  However, once Lichtenstein explained to Rockamore that he was required to answer per a prior Court ruling, Rockamore acquiesced:

**Question:**      I'm sorry about that Mr. Rockamore.  Are you clear

7

| | |
|---|---|
| | now as to what the Judge ruled? |
| **Witness**: | Yes. |
| **Question:** | So during our first break, which was approximately 11:03 to 11:17 Eastern Time, what did you discuss with your attorneys while you were on break? |
| **Witness:** | I recall being reminded that I need to only answer the questions that are posed to me and answer those as truthfully as I recall them.  That was basically the gist of the conversation, is to make sure I'm answering only the questions that I'm being asked. |
| **Question:** | Anything else? |
| **Witness:** | That's all I recall. |

(Doc. No. 119-3 at 97:9–98:2, 101:23–102:3.)

Plaintiffs' counsel then asked Rockamore about conversations that he had with Robert Jones, Esq. during break, and Lichtenstein objected, saying "So I'm going to object both on attorney/client privilege, and I'm going to object on foundation.  As you know, the Judge's order relates to discussions about the deposition."  (*See id.* at 99:23–100:17.)  He then instructed Rockamore not to answer the question to the extent that he spoke with Jones "about anything related to his role as an attorney that is not about [Rockamore's] testimony."  (*Id.* at 100:18–23.) Rockamore confirmed that his conversations with Jones were unrelated to his deposition.  (*See id.* at 101:23–102:3 ("Q: Mr. Rockamore, when we, Counsel Lichtenstein and I, were in conference with the Judge, did you talk to Mr. Jones about your deposition?  A: I did not.").)  In this motion, Plaintiffs' counsel argues that Lichtenstein's instruction was improper.

District courts have consistently held that "private conferences between deponents and their attorneys during the taking of a deposition are improper unless the conferences are for the purpose of determining whether a privilege should be asserted."  *See, e.g.*, *Hall*, 150 F.R.D. at 527 & n.2 (collecting cases).  A strict reading of *Hall* and similar cases suggests that with this

one exception, *no* conferences should be had between the deponent and his or her attorney once the deposition has begun.  But this case presents a unique wrinkle in that Rockamore was speaking to in-house counsel—who, although present for the deposition, was not actively defending Rockamore[4]—and Rockamore testified that those conversations were about matters unrelated to the deposition.  At least one district court in this Circuit has suggested that it would allow such conversations even with the attorney defending the deposition.  *See Vnuk v. Berwick Hosp. Co.*, No. 3:14-CV-01432, 2016 WL 907714, at *5 (M.D. Pa. Mar. 2, 2016) ("We are not opposed to allowing a deponent to speak with his or her attorney during recesses, as long as the discussion does not relate to the case in connection with which the client is being deposed.").

We will follow *Vnuk*.  Courts prohibit attorney–deponent conferences for fear that the attorney will influence the deponent's answer, thus interfering with the truth-finding purpose of the deposition.  *See Hall*, 150 F.R.D. at 528 ("To allow private conferences initiated by the witness would be to allow the witness to listen to the question, ask his or her lawyer for the answer, and then parrot the lawyer's response."); *cf. Vnuk*, 2016 WL 907714, at *3 ("The underlying reason for preventing private conferences is still present" at a deposition: "they tend, at the very least, to give the appearance of obstructing the truth." (quoting *Hall*, 150 F.R.D. at 528)).  But when an attorney speaks to a deponent during a break about other matters, there is no concern that the witness is being improperly coached about the ongoing deposition.[5]  In other

---

[4] For example, in-house counsel did not assert any objections on the record or attend the mid-deposition conferences with the Court.  (*See* Doc. No. 119 at 13:17–23 (Jones explaining that "I'm in-house counsel for American Airlines sitting in on the deposition.  Andrew Lichtenstein is the attorney of record that's representing American Airlines and Cedric in this deposition.").)

[5] Even if we were to apply a strict reading of *Hall* to this case and forbid all conversations between an attorney and a deponent once a deposition begins, we would nevertheless hold that disclosure of Rockamore's conversations with Robert Jones, Esq. about other matters is *not* an appropriate sanction, given the irrelevance of such conversations to this case.

words, the justification outlined by *Hall* is not implicated where, as here, the deponent speaks to in-house counsel, who is not defending the deposition, about something other than the ongoing case.  Therefore, we decline to find in the nuanced circumstances of this case that Rockamore waived his attorney-client privilege by having an unrelated conversation with in-house counsel during a break in the deposition.

*iv.*        *Suggestive Objections*

Last, we address Plaintiffs' general assertion that Lichtenstein's objections were unduly suggestive and led Rockamore to withhold relevant information.  (Doc. No. 119 at pp. 8–9.) After reviewing the relevant portions of the transcript, the Court disagrees with Plaintiffs' counsel's characterization.  Rule 30(c)(2) allows counsel for a deponent to object and instruct the deponent not to answer when necessary to "enforce a limitation ordered by the court" or to "preserve a privilege."  That is what Lichtenstein did here.  He objected to Plaintiffs' counsel's continued questioning about top filling in light of the Court's prior orders dismissing the top filling claims with prejudice and limiting discovery on those issues.  He then objected to questions about Rockamore's interactions with Karen Gillen, Esq. about last chance agreements and Rockamore's discussions with Robert Jones, Esq. during breaks because he reasonably believed they called for the disclosure of privileged information.  Moreover, in most instances, Lichtenstein stated his objection on the record in a concise manner and did not rephrase the question, interject his own opinion, or otherwise suggest a response to Rockamore.

Lichtenstein's conduct is thus a far cry from the type of conduct that courts have found sanctionable.[6]  *See O'Brien v. Amtrak*, 163 F.R.D. 232, 236 (E.D. Pa. 1995) (finding that

---

[6] In the alternative, even if we were to find Lichtenstein's objections suggestive and improper, we would not allow Plaintiffs' counsel to take another deposition of Rockamore because Plaintiffs are not entitled to the requested discovery on top filling, Rockamore's conversations with Karen Gillen, Esq., or Rockamore's unrelated conversations with in-house counsel during breaks.

"Defendants' counsel improperly objected to many questions and interposed many speaking objections that may have had the effect of affecting the witness's testimony" where a "reading of the depositions indicates that Defendants' counsel spoke almost as much, if not more than, the deponent did," consulted with witnesses during recesses and while questions were pending, resulting in changes in testimony, and gave "improper instructions not to answer certain questions"); *Clarity Sports Int'l LLC*, 2021 WL 2981038, at *3 ("Defense Counsel engaged in a plethora of 'speaking' objections, at times appearing to coach Shepherd.  For example, Plaintiffs' counsel asked Shepherd, 'Does CAA have any information that it could ever point to suggesting that someone else other than Todd France sent this?'  Before Shepherd could respond, Mr. Iaconelli interjected, 'Do you mean other than Todd France's sworn testimony and Jake Silver's sworn testimony?'"); *cf. York Grp., Inc.*, 2012 WL 12895533, at *2 ("My independent research identified a number of cases in which courts have awarded sanctions including the right to re-depose the witness based on the conduct of counsel representing the witness at the deposition. Each of those cases provides a clear example of inappropriate and sanctionable conduct under Rule 30 for excessive interruptions, coaching the witness and improper and repeated instructions not to answer.") (collecting cases).

*        *        *

In sum, when the Court views Rockamore's deposition in light of the principles outlined in Rule 30, we find that Plaintiffs had an adequate opportunity to examine Rockamore. Plaintiffs' first motion to compel is denied, as is the accompanying request for sanctions.

### B.    *Production of Documents*

Plaintiffs' second motion to compel seeks the production of documents responsive to their March 11, 2022 second request for production of documents.  (Doc. No. 120.)  Plaintiffs assert that American Airlines "served its responses with objections on April 11, 2022 but failed

to specific [sic] any 'reasonable time' in their response for producing documents and/or electronically stored information, and has not produced any responsive documents to date." (*Id.* at p. 1.)  Plaintiffs also state, without any citation to the record, that "at least 2 of American's witnesses testified of destruction of documents and implementation of new systems that make recovering relevant responsive documents untenable," and argue that American Airlines's failure to provide responsive documents "can be characterized as spoliation and sanctioned accordingly."  (*Id.* at pp. 2–3.)

The Court directed American Airlines to respond to the motion, but on the date its response was due, Plaintiffs' counsel informed the Court that "American has produced some documents and have [sic] agreed to produce [the] remaining documents by Monday, May 23 at the latest."  (Doc. No. 125-6.)  Given this production, Plaintiffs "withdr[e]w without prejudice their Motion until Friday, May 27."  (*Id.*)  Unfortunately, it appears that cooperation was fleeting, and on May 27, Plaintiffs' counsel informed the Court that, although American provided additional documents, "all documents provided are deficient and do not include documents American specifically stated they would produce . . . . Thus, at this writing, Plaintiffs are not withdrawing their motion to compel."  (Doc. No. 125-7.)  Plaintiffs did not discuss the scope of American Airlines's production or explain why they consider American Airlines's production "deficient" in its entirety.[7]

The Court denies Plaintiffs' motion as moot.  In their motion to compel, Plaintiffs argue that American Airlines failed to produce any responsive documents or designate a date by which

---

[7] Plaintiffs provide a brief overview of the alleged deficiencies in their response to American Airlines's motion to compel a computation of damages.  (*See* Doc. No. 125 at p. 6 (referencing "American's continued failure to produce substantive document protection [sic] and its destruction of documents and implementation of computer systems that further prevent production of responsive documents").)  But making passing references in a response brief to a different motion to compel is not the proper way to raise these issues with the Court.

it would make such a production.  After that motion was filed, American Airlines produced "all documents responsive" to the requests "that it has been able to locate after a reasonable search." (*See* Doc. No. 123; *see also* Doc. No. 125-1 at ¶ 28 (Plaintiffs' counsel declaring that "[o]n June 2, 2022, counsel Wood provided additional production of documents")[8].)  Because American has produced all documents in its possession, this motion does not present a live controversy.

Because we are denying the motion to compel, we likewise deny Plaintiffs' request for sanctions.  Nevertheless, we warn Plaintiffs' counsel that her suggestion that American's actions amount to spoliation is not supported by her briefing, and the Court is troubled by her repeated, unsupported requests for sanctions.  If Plaintiffs do in fact have evidence of spoliation, they may address it and the propriety of sanctions as a motion *in limine* pursuant to the deadlines set forth in the Court's Second Amended Scheduling Order.  Although a closer call, we also deny American Airlines's request for sanctions in the form of attorneys' fees and costs incurred responding to Plaintiffs' motion.

### C.    *Computation of Damages*

American Airlines has filed its own motions to compel, the first of which seeks an estimate and computation of Plaintiffs' claimed damages pursuant to Rule 26(a)(1)(iii) and in response to American Airlines's Interrogatory Nos. 5, 6, and 7.  (Doc. No. 122-1 at p. 2.) American Airlines argues that "[d]espite repeated requests, Plaintiffs refuse to provide a date by which they will provide their damages estimates and calculations, and, as a result, American is being severely prejudiced in its preparation for trial in this case."  (*Id.*)

Under Rule 26(a)(1)(iii), the plaintiff must provide "a computation of each category of

---

[8] Plaintiffs' counsel also attests that she is "locked out of counsel for American's law firms share file system" and that "[c]ounsel for American continues to fail to respond to [her] need for assistance with getting access to the alleged additional documents it is producing."  (Doc. No. 12-1 at ¶¶ 28–29.) **Defense counsel *must* ensure Plaintiffs' counsel has access to the supplemental production.**

damages claimed" and "make available for inspection and copying as under Rule 34 the

documents . . . on which each computation is based, including materials bearing on the nature

and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(iii).  In Plaintiffs' initial disclosures,

they explained that they "seek front pay and back pay, compensatory damages, emotional

distress, disgorgement, costs and attorneys' fees and such other relief as deemed proper and

just."  (Doc. No. 122-2, Ex. A.)

 American followed up on this disclosure in its interrogatories, asking about the nature of

Plaintiffs' claimed damages:

> **Interrogatory No. 5**
>
> For each category of damages set forth in the WHEREFORE clauses
> of the Complaint and in the Initial Disclosures, identify and describe
> your computation of such damages, including by specifying the
> amount of each category of damages and the method used to
> calculate those damages.
>
> **Interrogatory No. 6**
>
> For each category of damages set forth in the WHEREFORE clauses
> of the Complaint and in the Initial Disclosures, describe any steps
> you have taken to mitigate these damages, by what amount you
> mitigated your damages, and how you calculated that figure.
>
> **Interrogatory No. 7**
>
> Itemize any and all other damages, including but not limited [to],
> damages for physical, psychological, alleged emotional distress, or
> other injuries, for which you contend American is liable.

(*Id.*, Ex. B.)  Following a meet and confer between counsel, Plaintiffs filed amended

responses to interrogatories on February 14, 2022.  (*Id.*, Ex. D.)  In their amended responses,

Plaintiffs objected to Interrogatory No. 5 as "premature" and stated that they "reserve the right to

supplement and amend their response to this Interrogatory upon receipt of an expert report for

damages."  (*Id.* Ex. D.)  Similarly, in response to Interrogatory Nos. 6 and 7, Plaintiffs

"reserve[d] the right to supplement their response to th[ese] Interrogator[ies] upon receipt of an expert report." (*Id.*)

That same day, Plaintiffs also served amended initial disclosures, in which they continued to state that they seek "front and back pay, compensatory damages (emotional distress/pain and suffering); punitive damages, expert fees, attorneys' fees, [and] costs." (*Id.* Ex. E.)  However, they once again failed to provide any computation of damages or identify a documentary basis for their calculations, stating only that Fields "estimates his lost pay due to increased unpaid FMLA leave and missed extensions and overtime to be $20,000 to $40,000 annually since January 1, 2017." (*Id.*)  And that "at the time [of Roundtree's] voluntary leave and American's subsequent terminated [sic], Plaintiff Roundtree made approximately $32.63 per hour working 80–100 hours biweekly." (*Id.*)  Plaintiffs provided no information about Green's special damages.[9]

Three months later, on May 13, 2022, the Court's deadline to serve expert reports or to

---

[9] Plaintiffs' counsel spends almost the entirety of her response brief attacking defense counsel and addressing what she describes as "American's repeated misrepresentation of facts." (Doc. No. 125 at p. 5.)  She spends little of it addressing the substance of American's motion.  She does, however, confirm that Plaintiffs "provided some computation of damages information on February 14, 2022 and April 22, 2022.  While on voluntary leave of absence, American terminated Roundtree's employment; Plaintiff Fields continues to suffer back injuries and now hypertension due to stress at American and Plaintiff Green continues to seek therapy for emotional distress." (*Id.* at p. 4.)  She then confirms defense counsel's assertion as to the dollar figures they received on damages:

> For special damages, at the time his [sic] voluntary leave and American's subsequent terminated [sic] of employment, Plaintiff Roundtree made approximately $32.63 per hour working 80–100 hours biweekly.  Plaintiff Fields currently makes from $75,000 to $80,000 annually at American. He estimates his lost pay due to increased unpaid FMLA leave and missed extensions and overtime to be $20,000 to $40,000 annually since January 1, 2017 to the present based on average pay of Caucasian Bag Chute agents, who take advantage of extensions and overtime.

(*Id.*)  This is far from a *computation* of damages for any Plaintiff, and it fails to fully respond to American's interrogatories, which ask, among other things, that Plaintiffs "specify[ ] the amount of each category of damages and the method used to calculate those damages."

answer expert interrogatories came and went without Plaintiffs producing an expert report.[10]

(Doc. No. 106 at p. 1.)  Noting this failure, on May 16, American requested more complete

responses to Interrogatory Nos. 5, 6, and 7.  (Doc. No. 122-2 Ex. F.)  On May 29, following a

meet and confer between counsel, Plaintiffs' counsel responded that she would provide damages

estimates and calculations "after mediation."  (Doc. No. 122-2 at ¶ 10.)  When American warned

that it would be forced to file a motion to compel, Plaintiffs' counsel responded, "file whatever

you want."  (*Id.*)

With this backdrop in mind, the Court grants American's motion to compel.  Plaintiffs'

failure to provide a computation of damages is a clear violation of Rule 26(a) and Rule 33(b).

Plaintiffs shall amend their initial disclosures and provide complete responses to Interrogatory

Nos. 5, 6, and 7 by June 22, 2022. *See In re Oakwood Homes Corp.*, 340 B.R. 510, 540–41

(Bankr. D. Del. 2006) (finding the plaintiff's "initial disclosures fall woefully short of meeting

the requirements of Rule 26(a)(1)(C)" where the plaintiff failed to provide any computation and

stated only that it sought recovery of fraudulent transfers identified in the pleadings, "unspecified

damages as a result [of the defendant's] breach of fiduciary duties . . . in an amount to be proved

at trial," and "disgorgement of all unjust profiteering on the part of [the defendant]").  If

Plaintiffs' counsel fails to make a good faith effort to provide a computation, the Court will

entertain sanctions.  *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221–25 (3d Cir. 2003)

(finding district court did not abuse its discretion when it found the plaintiff's "eleventh-hour

filing of its damages calculation" prejudiced the defendant and amounted to bad faith, supporting

exclusion of plaintiff's damages evidence at trial); *Szusterman v. Amoco Oil Co.*, 112 F. App'x

---

[10] Plaintiffs failed to produce an expert report despite requesting an extension of the expert discovery deadlines and informing the Court that they would "provide expert testimony regarding compensatory damages including, but not limited to, forensic trauma."  (Doc. No. 106 at p. 1.)

130, 131 (3d Cir. 2004) (affirming district court's dismissal of case as a sanction for repeatedly "fail[ing] to provide a computation of his alleged $10,000,000 damages required by Federal Rule of Civil Procedure 26(a)(1)(C)" and failing to "furnish any facts or methodology based on which he calculated his alleged damages, despite the repeated requests to do so").

American Airlines also requests one hour of additional deposition time with each Plaintiff to discuss their damages claims and calculations.  (Doc. No. 122-2, Ex. H.)  That request is denied at this time.  If, after receiving the damages computation, American Airlines still needs additional deposition time with Plaintiffs, it may readdress the issue with the Court.

### D.  IME for Plaintiffs

Last, American Airlines moves to compel an IME for each Plaintiff.  (Doc. No. 127.)  In its motion, American Airlines outlines its repeated requests for Plaintiffs' availability to attend the examination and Plaintiffs' counsel's lack of response.  (*See id.* at p. 2.)  During the Court's June 16, teleconference, Plaintiffs' counsel conceded that American was entitled to take Plaintiffs' IMEs.  Therefore, the Court grants American's motion.[11]

*       *       *

In sum, Plaintiffs motions to compel are denied.  American's motions to compel are granted.[12]

---

[11]  During the June 16 teleconference, the Court ordered Plaintiffs' counsel to confer with her clients by the end of the day and provide their availability to defense counsel.  Both parties were then directed to send the Court a status update by 12:00 p.m. on June 17 with the dates of the IMEs.  At the close of business on June 16, Plaintiffs' counsel informed the Court that she had reached out to her clients but was still waiting to hear back from them.  She also noted that "after our teleconference, American gave me with [sic] a limited number of dates their expert is available.  I am not certain my clients will also be available at those times."  The Court reminds counsel that *Plaintiffs* are the ones who have failed to provide dates in response to defense counsel's numerous requests for availability, and as this Court has reiterated, we are not inclined to extend the discovery period any more than we must.  Therefore, Plaintiffs must make themselves available on one of the dates given by defense counsel.

[12]  During the June 16 telephone conference, the Court also addressed a deficiency letter from Plaintiffs' counsel to defense counsel about Plaintiffs' requests for production of documents referenced

## II.      MOTION TO RECONSIDER

In addition to the motions to compel, on June 3, Plaintiffs filed a motion for reconsideration of the Court's May 6 Order appointing Special Master Judge (Ret.) Thomas Rueter to preside over the retaking of Fields's oral deposition.  (Doc. No. 124.)  Plaintiffs bring their motion under Local Rule 7.1(g) and Federal Rule of Civil Procedure 59(e), but neither Rule is properly invoked here.  First, the motion is untimely under Local Rule 7.1(g), which states motions for reconsideration "shall be served and filed within fourteen (14) days after the entry of the order concerned."  E.D. Pa. L.R. 7.1(g) (governing motions to reconsider orders "other than those governed by Federal Rule of Civil Procedure 59(e)").  Second, although a party has 28 days to move for reconsideration under Rule 59(e), that Rule governs motions to "alter or amend *a judgment*."  Fed. R. Civ. P. 59(e).  The Court's May 6 Order was an interlocutory discovery order, and thus, far from a "judgment" that would trigger Rule 59(e).  *See Bonsu v. Jackson Nat'l Life Ins.*, No. CIV.A. 1:05-CV-2444, 2009 WL 662068, at *1 (M.D. Pa. Mar. 12, 2009) (finding that "the court's October 6, 2009 order compelled SSA to produce various tax-related documents," and was thus, "interlocutory in nature as opposed to a judgment, rendering Rule 59(e) inapplicable as a basis under which to seek reconsideration").

And even if we were to consider the substance of Plaintiffs' motion, we would deny reconsideration here.  Before altering or amending a prior decision, courts in this Circuit require the moving party to show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion []; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Café ex rel.*

---

during depositions.  (*See* Doc. No. 128 at pp. 4–6.)  The Court directed the parties to meet and confer about the alleged deficiencies by the close of business on June 16 and provide a status update by 12:00 p.m. on June 17.

*Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Plaintiffs argue that reconsideration is necessary to "correct a clear error of law or fact or to prevent manifest injustice."  (Doc. No. 124 at p. 1.)  They assert that defense counsel's conduct during Fields's initial deposition was "vexatious and badgering," and therefore "Defendant American should be solely responsible for payment of all fees for the appointment of the Special Master."  (*Id.* at p. 2.)  Although we agree that defense counsel's repeated questioning on the same issue is partially to blame for the Court's decision to appoint the Special Master, we cannot find her solely responsible.

A review of the initial deposition transcript confirms that Fields also *repeatedly* refused to respond to defense counsel's questions about the scope of his disparate treatment claim.  For example, when asked whether Fields believed Supervisor Bruce Fauntleroy wrote him up in November 2015 because of his race, Fields frequently replied in one breath that he did not know Fauntleroy's thoughts, that he was "being targeted," that the write up was retaliatory, that Fauntleroy was "trying to get [him] out the door," and that "everything has to do with the race discrimination.  Everything."  (*See* Doc. No. 124-1 at 205:19–206:4 ("Once again, I answered it. It's retaliatory, and it has everything to do with race retaliation and—and race and is retaliatory. It's to get paperwork, 'Get them out the door.'  It's not just one, just as I stated.  It's not just one. It's all—this all ties in together."); *id.* at 216:7–9 ("Once again, I—they all run together.  It's the race, it's—it's—it's retaliatory.  It's everything together."); *id.* at 218:24–219:8 ("I answered the question.  It's—well, what we filed, it's retaliatory to get us out; fire us.  It's everything.  It's race.  It's everything that's in our complaint.  Everything we filed, everything that was filed in '18, everything that—anything to get us out.  Anything to get us out, to get us fired, to— whatever.  It's part of this case.  It's everything.  It's not one component.  It's everything."); *see*

*also id.* at 165:5, 166:10–11, 167:6–11; 167:17–18, 167:25–168:1; 168:8–10, 169:3–4, 171:12–20, 174:14; 176:24–25, 183:21–22, 186:3–4, 187:2–5, 188:17–19, 198:8–9, 191:16–25, 198:8–9, 199:23–200:9, 206:10–13, 232:2–6.)  And each time defense counsel asked Fields to answer her question with a "yes" or "no" before explaining his answer, he refused to do so, stating, "I answered the question" or "I gave you the answer."  (*Id.* at 178:4–5, 178:10; *see also id.* at 169:19–20, 172:22, 173:3, 173:12, 175:24, 176:15, 176:18–19, 179:2, 1834:1, 194:1–3, 200:22, 202:12; 225:6, 225:16 *cf. id.* at 182:25–183:2 ("Q. And have you given me a yes-or-no answer? . . . The Witness: I gave you an answer."); *id.* at 201:24–202:1 (Fields testifying, "So you want a 'Yes' or 'No.' Nothing in this case is a 'Yes' or 'No.'  Nothing.  It's so many things that happened").)

After reviewing the entire transcript, the Court continues to find Fields equally responsible for the Court's decision to appoint the Special Master, and therefore, the Court will not disturb its Order that the parties split Special Master Rueter's costs evenly.  The motion for reconsideration is denied.

**III.     MOTION FOR EXTENSION**

In response to American Airlines's motion to compel IMEs, Plaintiffs assert that they "reasonably believe more time in fact discovery is needed to accomplish final depositions, proper disclosure of documents, . . . and any other issues this Court rules on based on the numerous motions outstanding."  (Doc. No. 128 at p. 2.)  American Airlines opposes a general extension of the discovery deadline, arguing that Plaintiffs have failed to demonstrate good cause for such an extension.  (*See* Doc. No. 129.)  With the limited exceptions noted in this Memorandum as to

Plaintiffs' damages computation and IMEs,[13] the Court will not alter the discovery deadline.[14]

## IV.   CONCLUSION

American Airlines's motions to compel are granted.  Plaintiffs' motions to compel,

motion for reconsideration, and extension request are denied.  An appropriate Order follows.

---

[13] During the June 16 teleconference, Plaintiffs' counsel also asked for an extension of the discovery deadline in relation to the deposition of Dr. Stacey Tyler.  The Court reserves ruling on this request until after the parties' mediation on June 30.

[14] This case has been pending for more than three years, and the parties have had almost nine months to complete discovery.  In that time, the Court has been compelled to hold seven telephone conferences related to discovery, resolved seven motions to compel, and enlisted the help of Special Master Rueter to oversee Fields's deposition.  It is time to bring this contentious discovery period to a close.  The parties are warned that any discovery motions filed in the final hours of discovery will likely be referred to Special Master Rueter at the parties' joint expense.